1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   ADAM SHARPE,

11          Plaintiff,              No. 2:10-cv-2484 JFM P

12     vs.

13   HIGH DESERT STATE PRISON,
     et al.,                        ORDER AND
14
            Defendants.             FINDINGS & RECOMMENDATIONS
15   _____/

16          Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to

17   42 U.S.C. § 1983.  Plaintiff claims that defendants violated his rights under the Eighth

18   Amendment by failing to provide adequate medical treatment for deterioration of his cornea.

19   This matter is before the court on cross motions for summary judgment.[1]

20

21       [1] Plaintiff filed a motion for summary judgment on July 25, 2012.  On August 15, 2012,
     defendants filed a cross-motion for summary judgment.  On August 30, 2012, plaintiff filed an
     opposition to the motion, and on September 6, 2012, defendants filed a reply.  On September 12,
22   2012, following the decision of the United States Court of Appeals for the Ninth Circuit in
     Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), the court granted plaintiff a period of thirty days in
23   which to file and serve a supplemental opposition to defendants' motion for summary judgment
     and granted defendants fourteen days in which to file and serve a supplemental reply.  On
24   September 28, 2012, plaintiff filed a supplemental opposition, and on November 7, 2012,
     plaintiff filed a request that material in that supplemental opposition be deemed true in light of
25   defendants failure to file a reply brief.  On November 20, 2012, defendants filed an opposition to
     the argument raised in the November 7, 2012 request, contending that plaintiff has not identified
26   the "facts" he contends should be deemed true.  Defendants request that the court disregard or

                                    1

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

1  Summary judgment is appropriate when it is demonstrated that there exists "no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party
> always bears the initial responsibility of informing the district court
> of the basis for its motion, and identifying those portions of "the
> pleadings, depositions, answers to interrogatories, and admissions
> on file, together with the affidavits, if any," which it believes
> demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  "[W]here the

nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary

judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers

to interrogatories, and admissions on file.'"  Id.  Indeed, summary judgment should be entered,

after adequate time for discovery and upon motion, against a party who fails to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial.  See id. at 322.  "[A] complete failure of proof

concerning an essential element of the nonmoving party's case necessarily renders all other facts

immaterial."  Id.  In such a circumstance, summary judgment should be granted, "so long as

whatever is before the district court demonstrates that the standard for entry of summary

judgment, as set forth in Rule 56(c), is satisfied."  Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the

opposing party to establish that a genuine issue as to any material fact actually does exist.  See

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to

establish the existence of this factual dispute, the opposing party may not rely upon the

---

strike the November 7, 2012 filing.  The court has considered all of the documents filed in
connection with the cross-motions for summary judgment, including plaintiff's November 7,
2012 request and defendants' November 20, 2012 response thereto and will neither strike nor
disregard any of them.

allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson, 477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

3

1    as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no

2    'genuine issue for trial.'"  Matsushita, 475 U.S. at 587 (citation omitted).

3              On December 14, 2010 and September 12, 2012, the court advised plaintiff of the

4    requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.

5    See Woods v. Carey, 684 F.3d 934 (9ᵗʰ Cir. 2012), Rand v. Rowland, 154 F.3d 952, 957 (9th Cir.

6    1998) (en banc), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

7                                           ANALYSIS

8    I.  Undisputed Facts

9              At all times relevant to this action plaintiff was a state prisoner in the California

10   Department of Corrections and Rehabilitation (CDCR) housed at High Desert State Prison (High

11   Desert) in Susanville, California.  (Complaint, filed September 15, 2010.)  At all times relevant

12   to this action defendant Tom Felker was employed by the CDCR working as the Warden of High

13   Desert.  (Complaint at 2.)  Defendant Dwight Winslow was the Chief Physician Executive for

14   California Prison Health Care Services, working at High Desert.  (Complaint at 2; Defendants'

15   Memorandum of Points and Authorities in Support of Cross-Motion for Summary Judgment and

16   Opposition, filed August 15, 2012, at 14[2].)  Defendant Dr. Hlusak was an optometrist providing

17   services to inmates at High Desert.  (Complaint, at 2; Defendants' Ex. A, Defendant Hlusak's

18   Response to Plaintiff's First Set of Interrogatories, filed August 15, 2012, at 3.)

19             On March 15, 2005, defendant Hlusak saw plaintiff for the first time and

20   diagnosed suspected early keratoconus.  (Defendants' Ex. A at 3-4.)  "Keratoconus is a

21   degeneration of the structure of the cornea.  The cornea is the clear tissue covering the front of

22   the eye.  The shape of the cornea slowly changes from the normal round shape to a cone shape."

23   (Defendants' Ex. C, at 1.)  At the time of this visit, plaintiff's uncorrected vision was 20/40 in

24   both his right and his left eye.  (Defendants' Ex. A at 4.)  Defendant Hlusak ordered eyeglasses to

25

26        [2]  Defendants' memorandum is not evidence of defendant Winslow's position, but it
     appears to describe the position held by defendant Winslow as identified in plaintiff's complaint.

1  correct plaintiff's vision to 20/30 in the right eye and 20/40 for the left eye and scheduled

2  plaintiff for a follow-up visit.  (Id.)

3  Defendant Hlusak saw plaintiff for a six month follow-up on September 13, 2005.

4  (Defendants' Ex. A at 5.)  At that time, plaintiff's vision in his right eye was 20/70 and his left

5  eye remained unchanged.  (Id.)  Defendant Hlusak prescribed new eyeglasses that corrected

6  plaintiff's vision to 20/60 in the right eye and 20/40 in the left eye.  (Id.)  He also referred

7  plaintiff to a specialist to confirm the diagnosis of keratoconus and make further

8  recommendations regarding treatment.  (Id.)

9  Plaintiff saw a consulting ophthalmologist on November 7, 2005.  (Id. at 6.)

10  Plaintiff's corrected vision with eyeglasses was 20/50 in the right eye and 20/40 in the left eye.

11  (Id.)  The ophthalmologist diagnosed probable early keratoconus, suggested periodic follow-ups

12  with an optometrist and a follow-up with an ophthalmologist in a year.  (Id.)  He also

13  recommended consideration of contact lenses in the future if eyeglasses failed to provide

14  sufficient visual acuity.  (Id.)

15  Defendant Hlusak saw plaintiff again on July 27, 2006.  (Id.)  Plaintiff's vision in

16  his right eye had changed to 20/80 while the vision in his left eye was still 20/40.  (Id.)

17  Defendant Hlusak prescribed both eyeglasses and hard contact lenses to correct plaintiff's vision

18  to 20/60 in the right eye and 20/40 in the left eye.  (Id.)  He also referred plaintiff to an

19  ophthalmologist at University of California-Davis Medical Center (UCDMC) for further

20  evaluation of his cornea and fitting of hard contact lenses.  (Id.)

21  On October 23, 2006, plaintiff was seen by an ophthalmologist at UCDMC.  The

22  ophthalmologist diagnosed keratoconus, worse in the right eye than the left, and recommended

23  rigid gas-permeable (RGP) contact lenses.  (Id.)  The ophthalmologist noted that a corneal

24  transplant would be required if the fitting of the RGP lenses was unsuccessful.  (Id.)

25  Plaintiff was seen on February 16, 2007 for fitting of the RGP lenses.

26  (Attachment 1 to Defendants' Ex. A, at 30-32.)  Plaintiff received the lenses in March 2007, a

1  month later.  (Supplemental Opposition to Defendants' Cross-Motion for Summary Judgment,

2  filed September 28, 2012, at 3.)  Thereafter, plaintiff was seen at UCDMC on July 10, 2007,

3  November 15, 2007, February 5, 2008, April 8, 2008, and August 12, 2008.  (Defendants' Ex. A,

4  at 7.)  At the February 2008 visit, the ophthalmologist changed plaintiff's contact lens

5  prescription from hard contact lenses to SynergEyes hybrid lenses.  (Id.)

6          Plaintiff was seen by defendant Hlusak on June 4, 2009.  (Id. at 8.)  He requested

7  eyeglasses for the prison yard instead of the hybrid contacts.  (Id.)  Defendant Hlusak found that

8  plaintiff's uncorrected vision had worsened to 20/400 in his right eye and 20/200 in the left eye.

9  (Id.)  Defendant Hlusak prescribed eyeglasses and contact lenses to correct plaintiff's vision to

10  20/100 in the right eye and 20/60 in the left eye.  (Id.)  He also referred plaintiff to UCDMC to

11  determine whether a corneal transplant was indicated.  (Id.)  The eyeglasses prescribed by

12  defendant Hlusak were dispensed.  (Id.)  Defendant Hlusak did not see plaintiff again.  (Id.)

13  Another doctor at High Desert continued to prescribed Synerg Eyes hybrid lenses for plaintiff for

14  the next eighteen months.  (Id. at 8-9.)  Plaintiff filed this action on September 15, 2010.

15  (Complaint at 1.)  He was transferred to Calipatria State Prison in early December 2010.  (Id.)  At

16  the time of the transfer, he was waiting for a new SynergEyes right eye contact lens to be

17  dispensed.  (Id.)

18          Following his transfer to Calipatria, plaintiff was seen several times by an

19  optometrist.  (Defendants' Ex. E, Declaration of Cheryl Burnette, O.D., filed August 15, 2012

20  (Burnette Decl.).)  He was also seen by an ophthalmologist.  (Id.)  He has received several pairs

21  of replacement SynergEyes contact lenses.  (Id.)  He has also been evaluated by an

22  ophthalmologist at University of California-San Diego Medical Center (UCSDMC), who told

23  plaintiff in September 2011 that he was not yet a candidate for surgery.  (Attachment 1 to

24  Burnette Decl. at 26.)  On May 31, 2012, plaintiff was provided with another replacement pair of

25  SynergEyes lenses, and on June 8, 2012, Dr. Burnette found that plaintiff's corrected vision with

26  /////

1    these lenses was 20/25 minus one in one eye and 20/25 plus two in the other eye.  (Burnette

2    Decl., ¶ 23.)

3    II.  Legal Standards

4            In order to prevail on his Eighth Amendment claim, plaintiff must prove that he

5    had a "serious medical need" and that defendants acted with "deliberate indifference" to that

6    need.  Estelle v. Gamble, 429 U.S. 97, 105 (1976).  A medical need is serious if  "the failure to

7    treat a prisoner's condition could result in further significant injury or the 'unnecessary and

8    wanton infliction of pain'."  McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992) (quoting

9    Estelle, 429 U.S. at 104, 97 S.Ct. 285).  Deliberate indifference is proved by evidence that a

10   prison official "knows of and disregards an excessive risk to inmate health or safety; the official

11   must both be aware of the facts from which the inference could be drawn that a substantial risk of

12   serious harm exists, and he must also draw the inference."  Farmer v. Brennan, 511 825, 837

13   (1994).  "Prison officials are deliberately indifferent to a prisoner's serious medical needs when

14   they deny, delay, or intentionally interfere with medical treatment."  Hallett v. Morgan, 296 F.3d

15   732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted).

16           Mere negligence is insufficient for Eighth Amendment liability.  Frost v. Agnos,

17   152 F.3d 1124, 1128 (9th Cir. 1998).  In addition, "[a] difference of opinion between a physician

18   and the prisoner – or between medical professionals – concerning what medical care is

19   appropriate does not amount to deliberate indifference."  Snow v. McDaniel, 681 F.3d 978, 987

20   (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)).

21   III.  Application

22           Plaintiff claims that defendants violated his rights under the Eighth Amendment

23   by failing to provide him with replacement lenses every six months and a constant supply of lens

24   cleaning solution, which caused his eyesight to deteriorate further, and by failing to provide him

25   with corneal transplant surgery or other newer forms of treatment.  Plaintiff also claims that he

26   could not wear contact lenses on the prison yard at High Desert because doctors told him that

1  such lenses would "suck up" tear gas or pepper spray "like a sponge" and both tear gas and

2  pepper spray were used regularly.  Complaint, at 5.  Plaintiff claims that he was unsafe on the

3  prison yard because his vision is so poor that he is incapable of defending himself from violence.

4        Defendant Hlusak seeks summary judgment on the grounds that plaintiff's claim

5  is based solely on a difference of opinion with his medical care, and that there is no evidence that

6  any delay in prescribing contact lenses or referring plaintiff to an ophthalmologist caused

7  plaintiff harm.  Defendant Hlusak also contends that plaintiff's contention that he is entitled to

8  damages for emotional distress caused by worry about his safety on the prison yard is without

9  merit.  Finally, defendant Hlusak contends that plaintiff's contention that he is legally blind is

10  factually incorrect.  Defendants Felker and Winslow seek summary judgment on the ground that

11  the only allegations against them involve their supervisory roles, which is not a basis for liability

12  in this § 1983 action.  Finally, defendants claim they are entitled to qualified immunity.

13        Plaintiff's Eighth Amendment claim is based on delays in prescribing contact

14  lenses and in furnishing the lenses once they were initially prescribed, delays in providing

15  replacement lenses and contact lens cleaning solution, and failure to consider surgical treatment

16  when contact lens therapy appeared to be inefficacious.

17        The record supports plaintiff's general contention that during the relevant period

18  of incarceration at High Desert plaintiff suffered through delays in delivery of contact lenses once

19  they were prescribed as well as delays in provision of necessary contact lens solution.  However,

20  there is no evidence linking defendant Hlusak to those delays.

21        The undisputed evidence shows that defendant Hlusak prescribed eyeglasses for

22  plaintiff the first time he saw him in March 2005, and that he saw plaintiff six months later for a

23  follow-up visit. At that follow-up visit in September 2005, defendant Hlusak prescribed new

24  glasses and referred plaintiff to a an ophthalmologist.  Plaintiff saw the ophthalmologist two

25  months later.  The ophthalmologist confirmed the diagnosis of probable early keratoconus,

26  suggested periodic follow-ups with an optometrist and a follow-up with an ophthalmologist in a

1 year, and recommended consideration of contact lenses in the future if eyeglasses failed to

2 provide plaintiff sufficient visual acuity.

3       Defendant Hlusak next saw plaintiff eight months after he saw the

4 ophthalmologist.  At that visit in July 2006, defendant prescribed both eyeglasses and hard

5 contact lenses, and he referred plaintiff to an ophthalmologist at UCDMC for further evaluation

6 of his cornea and fitting of hard contact lenses.  Plaintiff saw the ophthalmologist at UCDMC

7 three months later, in October 2006.  The ophthalmologist diagnosed keratoconus, worse in the

8 right eye than the left, recommended RGP contact lenses, and noted that a corneal transplant

9 would be required if the fitting of the RGP lenses was unsuccessful.

10       Plaintiff was seen four months later in February 2007 for fitting of the RGP

11 lenses, and he received the lenses a month later in March 2007.  (Supplemental Opposition to

12 Defendants' Cross-Motion for Summary Judgment, filed September 28, 2012, at 3.)

13 (Attachment 1 to Defendants' Ex. A, at 30-32.)  Plaintiff was seen five times thereafter at

14 UCDMC between July 2007 and August 2008.  In February 2008, the ophthalmologist changed

15 plaintiff's contact lens prescription from hard contact lenses to SynergEyes hybrid lenses.

16       Plaintiff was seen by defendant Hlusak on June 4, 2009.  He requested eyeglasses

17 for the prison yard instead of the hybrid contacts.  Defendant Hlusak prescribed eyeglasses and

18 contact lenses and referred plaintiff to UCDMC to determine whether a corneal transplant was

19 indicated.  The eyeglasses prescribed by defendant Hlusak were dispensed.  Defendant Hlusak

20 did not see plaintiff again after this visit.

21       The foregoing undisputed evidence shows that defendant Hlusak was not

22 deliberately indifferent to plaintiff's need for proper diagnosis and treatment of plaintiff's eye

23 disease.  Although there is evidence that plaintiff suffered delays, particularly in receiving

24 necessary lense solution, there is no evidence linking defendant Hlusak to those delays.  Finally,

25 the undisputed evidence shows that defendant Hlusak did refer plaintiff for consideration of

26 corneal transplant surgery.  The undisputed evidence also shows that plaintiff's condition has

1  stabilized at Calipatria and therefore does not support his contention that defendant Hlusak was

2  deliberately indifferent in failing to provide the surgery while plaintiff was at High Desert.  For

3  all of these reasons, defendant Hlusak is entitled to summary judgment.

4         The Civil Rights Act under which this action was filed provides as follows:

5         Every person who, under color of [state law] . . . subjects, or causes
       to be subjected, any citizen of the United States . . . to the

6         deprivation of any rights, privileges, or immunities secured by the
       Constitution . . . shall be liable to the party injured in an action at

7         law, suit in equity, or other proper proceeding for redress.

8  42 U.S.C. § 1983.  The statute requires that there be an actual connection or link between the

9  actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

10  Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

11  (1976).  "A person 'subjects' another to the deprivation of a constitutional right, within the

12  meaning of  § 1983, if he does an affirmative act, participates in another's affirmative acts or

13  omits to perform an act which he is legally required to do that causes the deprivation of which

14  complaint is made."  Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

15         Moreover, supervisory personnel are generally not liable under § 1983 for the

16  actions of their employees under a theory of respondeat superior and, therefore, when a named

17  defendant holds a supervisorial position, the causal link between him and the claimed

18  constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862

19  (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S.

20  941 (1979).

21         Plaintiff has presented no evidence that defendants Felker or Winslow were

22  personally involved in the events complained of.  To the contrary, in his opposition, plaintiff

23  relies on the supervisory role of each defendant to support their inclusion in this action.  See

24  Opposition to Defendants Cross-Motion for Summary Judgment, filed August 30, 2012, at 5-6.

25  Defendants Felker and Winslow are entitled to summary judgment.

26  /////

1    In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the

2 Court is directed to assign this action to a United States District Judge;

3    IT IS HEREBY RECOMMENDED that:

4    1.  Plaintiff's July 25, 2012 motion for summary judgment be denied; and

5    2.  Defendants' August 15, 2012 cross-motion for summary judgment be granted.

6    These findings and recommendations are submitted to the United States District

7 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

8 days after being served with these findings and recommendations, any party may file written

9 objections with the court and serve a copy on all parties.  Such a document should be captioned

10 "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

11 objections shall be filed and served within fourteen days after service of the objections.  The

12 parties are advised that failure to file objections within the specified time may waive the right to

13 appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

14 DATED: February 20, 2013.

UNITED STATES MAGISTRATE JUDGE

12
shar2484.57

11