IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ADAM SHARPE,

        Plaintiff,                          No. 2:10-cv-2484 JFM P

    vs.

HIGH DESERT STATE PRISON,
et al.,                                 <u>ORDER AND</u>

        Defendants.             <u>FINDINGS & RECOMMENDATIONS</u>

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that defendants violated his rights under the Eighth Amendment by failing to provide adequate medical treatment for deterioration of his cornea. This matter is before the court on cross motions for summary judgment.[1]

---

[1] Plaintiff filed a motion for summary judgment on July 25, 2012. On August 15, 2012, defendants filed a cross-motion for summary judgment. On August 30, 2012, plaintiff filed an opposition to the motion, and on September 6, 2012, defendants filed a reply. On September 12, 2012, following the decision of the United States Court of Appeals for the Ninth Circuit in <u>Woods v. Carey</u>, 684 F.3d 934 (9th Cir. 2012), the court granted plaintiff a period of thirty days in which to file and serve a supplemental opposition to defendants' motion for summary judgment and granted defendants fourteen days in which to file and serve a supplemental reply. On September 28, 2012, plaintiff filed a supplemental opposition, and on November 7, 2012, plaintiff filed a request that material in that supplemental opposition be deemed true in light of defendants failure to file a reply brief. On November 20, 2012, defendants filed an opposition to the argument raised in the November 7, 2012 request, contending that plaintiff has not identified the "facts" he contends should be deemed true. Defendants request that the court disregard or

1

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the

---

strike the November 7, 2012 filing. The court has considered all of the documents filed in connection with the cross-motions for summary judgment, including plaintiff's November 7, 2012 request and defendants' November 20, 2012 response thereto and will neither strike nor disregard any of them.

1  allegations or denials of its pleadings but is required to tender evidence of specific facts in the
2  form of affidavits, and/or admissible discovery material, in support of its contention that the
3  dispute exists.  See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11.  The opposing party
4  must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome
5  of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248
6  (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir.
7  1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could
8  return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433,
9  1436 (9th Cir. 1987).

10         In the endeavor to establish the existence of a factual dispute, the opposing party
11  need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the
12  claimed factual dispute be shown to require a jury or judge to resolve the parties' differing
13  versions of the truth at trial."  T.W. Elec. Serv., 809 F.2d at 631.  Thus, the "purpose of summary
14  judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a
15  genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory
16  committee's note on 1963 amendments).

17         In resolving the summary judgment motion, the court examines the pleadings,
18  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if
19  any.  Fed. R. Civ. P. 56(c).  The evidence of the opposing party is to be believed.  See Anderson,
20  477 U.S. at 255.  All reasonable inferences that may be drawn from the facts placed before the
21  court must be drawn in favor of the opposing party.  See Matsushita, 475 U.S. at 587.
22  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
23  produce a factual predicate from which the inference may be drawn.  See Richards v. Nielsen
24  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
25  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
26  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken

1 as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
2 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

3         On December 14, 2010 and September 12, 2012, the court advised plaintiff of the
4 requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.
5 See Woods v. Carey, 684 F.3d 934 (9th Cir. 2012), Rand v. Rowland, 154 F.3d 952, 957 (9th Cir.
6 1998) (en banc), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

## ANALYSIS

### I. Undisputed Facts

At all times relevant to this action plaintiff was a state prisoner in the California Department of Corrections and Rehabilitation (CDCR) housed at High Desert State Prison (High Desert) in Susanville, California. (Complaint, filed September 15, 2010.) At all times relevant to this action defendant Tom Felker was employed by the CDCR working as the Warden of High Desert. (Complaint at 2.) Defendant Dwight Winslow was the Chief Physician Executive for California Prison Health Care Services, working at High Desert. (Complaint at 2; Defendants' Memorandum of Points and Authorities in Support of Cross-Motion for Summary Judgment and Opposition, filed August 15, 2012, at 14[2].) Defendant Dr. Hlusak was an optometrist providing services to inmates at High Desert. (Complaint, at 2; Defendants' Ex. A, Defendant Hlusak's Response to Plaintiff's First Set of Interrogatories, filed August 15, 2012, at 3.)

On March 15, 2005, defendant Hlusak saw plaintiff for the first time and diagnosed suspected early keratoconus. (Defendants' Ex. A at 3-4.) "Keratoconus is a degeneration of the structure of the cornea. The cornea is the clear tissue covering the front of the eye. The shape of the cornea slowly changes from the normal round shape to a cone shape." (Defendants' Ex. C, at 1.) At the time of this visit, plaintiff's uncorrected vision was 20/40 in both his right and his left eye. (Defendants' Ex. A at 4.) Defendant Hlusak ordered eyeglasses to

---

[2] Defendants' memorandum is not evidence of defendant Winslow's position, but it appears to describe the position held by defendant Winslow as identified in plaintiff's complaint.

1  correct plaintiff's vision to 20/30 in the right eye and 20/40 for the left eye and scheduled
2  plaintiff for a follow-up visit. (Id.)
3        Defendant Hlusak saw plaintiff for a six month follow-up on September 13, 2005.
4  (Defendants' Ex. A at 5.) At that time, plaintiff's vision in his right eye was 20/70 and his left
5  eye remained unchanged. (Id.) Defendant Hlusak prescribed new eyeglasses that corrected
6  plaintiff's vision to 20/60 in the right eye and 20/40 in the left eye. (Id.) He also referred
7  plaintiff to a specialist to confirm the diagnosis of keratoconus and make further
8  recommendations regarding treatment. (Id.)
9        Plaintiff saw a consulting ophthalmologist on November 7, 2005. (Id. at 6.)
10 Plaintiff's corrected vision with eyeglasses was 20/50 in the right eye and 20/40 in the left eye.
11 (Id.) The ophthalmologist diagnosed probable early keratoconus, suggested periodic follow-ups
12 with an optometrist and a follow-up with an ophthalmologist in a year. (Id.) He also
13 recommended consideration of contact lenses in the future if eyeglasses failed to provide
14 sufficient visual acuity. (Id.)
15       Defendant Hlusak saw plaintiff again on July 27, 2006. (Id.) Plaintiff's vision in
16 his right eye had changed to 20/80 while the vision in his left eye was still 20/40. (Id.)
17 Defendant Hlusak prescribed both eyeglasses and hard contact lenses to correct plaintiff's vision
18 to 20/60 in the right eye and 20/40 in the left eye. (Id.) He also referred plaintiff to an
19 ophthalmologist at University of California-Davis Medical Center (UCDMC) for further
20 evaluation of his cornea and fitting of hard contact lenses. (Id.)
21       On October 23, 2006, plaintiff was seen by an ophthalmologist at UCDMC. The
22 ophthalmologist diagnosed keratoconus, worse in the right eye than the left, and recommended
23 rigid gas-permeable (RGP) contact lenses. (Id.) The ophthalmologist noted that a corneal
24 transplant would be required if the fitting of the RGP lenses was unsuccessful. (Id.)
25       Plaintiff was seen on February 16, 2007 for fitting of the RGP lenses.
26 (Attachment 1 to Defendants' Ex. A, at 30-32.) Plaintiff received the lenses in March 2007, a

month later. (Supplemental Opposition to Defendants' Cross-Motion for Summary Judgment, filed September 28, 2012, at 3.) Thereafter, plaintiff was seen at UCDMC on July 10, 2007, November 15, 2007, February 5, 2008, April 8, 2008, and August 12, 2008. (Defendants' Ex. A, at 7.) At the February 2008 visit, the ophthalmologist changed plaintiff's contact lens prescription from hard contact lenses to SynergEyes hybrid lenses. (Id.)

Plaintiff was seen by defendant Hlusak on June 4, 2009. (Id. at 8.) He requested eyeglasses for the prison yard instead of the hybrid contacts. (Id.) Defendant Hlusak found that plaintiff's uncorrected vision had worsened to 20/400 in his right eye and 20/200 in the left eye. (Id.) Defendant Hlusak prescribed eyeglasses and contact lenses to correct plaintiff's vision to 20/100 in the right eye and 20/60 in the left eye. (Id.) He also referred plaintiff to UCDMC to determine whether a corneal transplant was indicated. (Id.) The eyeglasses prescribed by defendant Hlusak were dispensed. (Id.) Defendant Hlusak did not see plaintiff again. (Id.) Another doctor at High Desert continued to prescribed Synerg Eyes hybrid lenses for plaintiff for the next eighteen months. (Id. at 8-9.) Plaintiff filed this action on September 15, 2010. (Complaint at 1.) He was transferred to Calipatria State Prison in early December 2010. (Id.) At the time of the transfer, he was waiting for a new SynergEyes right eye contact lens to be dispensed. (Id.)

Following his transfer to Calipatria, plaintiff was seen several times by an optometrist. (Defendants' Ex. E, Declaration of Cheryl Burnette, O.D., filed August 15, 2012 (Burnette Decl.).) He was also seen by an ophthalmologist. (Id.) He has received several pairs of replacement SynergEyes contact lenses. (Id.) He has also been evaluated by an ophthalmologist at University of California-San Diego Medical Center (UCSDMC), who told plaintiff in September 2011 that he was not yet a candidate for surgery. (Attachment 1 to Burnette Decl. at 26.) On May 31, 2012, plaintiff was provided with another replacement pair of SynergEyes lenses, and on June 8, 2012, Dr. Burnette found that plaintiff's corrected vision with
/////

these lenses was 20/25 minus one in one eye and 20/25 plus two in the other eye. (Burnette Decl., ¶ 23.)

## II. Legal Standards

In order to prevail on his Eighth Amendment claim, plaintiff must prove that he had a "serious medical need" and that defendants acted with "deliberate indifference" to that need. Estelle v. Gamble, 429 U.S. 97, 105 (1976). A medical need is serious if "the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain'." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992) (quoting Estelle, 429 U.S. at 104, 97 S.Ct. 285). Deliberate indifference is proved by evidence that a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 825, 837 (1994). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment." Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002) (internal citations and quotation marks omitted).

Mere negligence is insufficient for Eighth Amendment liability. Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998). In addition, "[a] difference of opinion between a physician and the prisoner – or between medical professionals – concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)).

## III. Application

Plaintiff claims that defendants violated his rights under the Eighth Amendment by failing to provide him with replacement lenses every six months and a constant supply of lens cleaning solution, which caused his eyesight to deteriorate further, and by failing to provide him with corneal transplant surgery or other newer forms of treatment. Plaintiff also claims that he could not wear contact lenses on the prison yard at High Desert because doctors told him that

7

1 such lenses would "suck up" tear gas or pepper spray "like a sponge" and both tear gas and
2 pepper spray were used regularly.  Complaint, at 5.  Plaintiff claims that he was unsafe on the
3 prison yard because his vision is so poor that he is incapable of defending himself from violence.

4         Defendant Hlusak seeks summary judgment on the grounds that plaintiff's claim
5 is based solely on a difference of opinion with his medical care, and that there is no evidence that
6 any delay in prescribing contact lenses or referring plaintiff to an ophthalmologist caused
7 plaintiff harm.  Defendant Hlusak also contends that plaintiff's contention that he is entitled to
8 damages for emotional distress caused by worry about his safety on the prison yard is without
9 merit.  Finally, defendant Hlusak contends that plaintiff's contention that he is legally blind is
10 factually incorrect.  Defendants Felker and Winslow seek summary judgment on the ground that
11 the only allegations against them involve their supervisory roles, which is not a basis for liability
12 in this § 1983 action.  Finally, defendants claim they are entitled to qualified immunity.

13         Plaintiff's Eighth Amendment claim is based on delays in prescribing contact
14 lenses and in furnishing the lenses once they were initially prescribed, delays in providing
15 replacement lenses and contact lens cleaning solution, and failure to consider surgical treatment
16 when contact lens therapy appeared to be inefficacious.

17         The record supports plaintiff's general contention that during the relevant period
18 of incarceration at High Desert plaintiff suffered through delays in delivery of contact lenses once
19 they were prescribed as well as delays in provision of necessary contact lens solution.  However,
20 there is no evidence linking defendant Hlusak to those delays.

21         The undisputed evidence shows that defendant Hlusak prescribed eyeglasses for
22 plaintiff the first time he saw him in March 2005, and that he saw plaintiff six months later for a
23 follow-up visit. At that follow-up visit in September 2005, defendant Hlusak prescribed new
24 glasses and referred plaintiff to a an ophthalmologist.  Plaintiff saw the ophthalmologist two
25 months later.  The ophthalmologist confirmed the diagnosis of probable early keratoconus,
26 suggested periodic follow-ups with an optometrist and a follow-up with an ophthalmologist in a

year, and recommended consideration of contact lenses in the future if eyeglasses failed to provide plaintiff sufficient visual acuity.

Defendant Hlusak next saw plaintiff eight months after he saw the ophthalmologist. At that visit in July 2006, defendant prescribed both eyeglasses and hard contact lenses, and he referred plaintiff to an ophthalmologist at UCDMC for further evaluation of his cornea and fitting of hard contact lenses. Plaintiff saw the ophthalmologist at UCDMC three months later, in October 2006. The ophthalmologist diagnosed keratoconus, worse in the right eye than the left, recommended RGP contact lenses, and noted that a corneal transplant would be required if the fitting of the RGP lenses was unsuccessful.

Plaintiff was seen four months later in February 2007 for fitting of the RGP lenses, and he received the lenses a month later in March 2007. (Supplemental Opposition to Defendants' Cross-Motion for Summary Judgment, filed September 28, 2012, at 3.) (Attachment 1 to Defendants' Ex. A, at 30-32.) Plaintiff was seen five times thereafter at UCDMC between July 2007 and August 2008. In February 2008, the ophthalmologist changed plaintiff's contact lens prescription from hard contact lenses to SynergEyes hybrid lenses.

Plaintiff was seen by defendant Hlusak on June 4, 2009. He requested eyeglasses for the prison yard instead of the hybrid contacts. Defendant Hlusak prescribed eyeglasses and contact lenses and referred plaintiff to UCDMC to determine whether a corneal transplant was indicated. The eyeglasses prescribed by defendant Hlusak were dispensed. Defendant Hlusak did not see plaintiff again after this visit.

The foregoing undisputed evidence shows that defendant Hlusak was not deliberately indifferent to plaintiff's need for proper diagnosis and treatment of plaintiff's eye disease. Although there is evidence that plaintiff suffered delays, particularly in receiving necessary lense solution, there is no evidence linking defendant Hlusak to those delays. Finally, the undisputed evidence shows that defendant Hlusak did refer plaintiff for consideration of corneal transplant surgery. The undisputed evidence also shows that plaintiff's condition has

stabilized at Calipatria and therefore does not support his contention that defendant Hlusak was deliberately indifferent in failing to provide the surgery while plaintiff was at High Desert. For all of these reasons, defendant Hlusak is entitled to summary judgment.

The Civil Rights Act under which this action was filed provides as follows:

> Every person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution . . . shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by plaintiff. See Monell v. Department of Social Servs., 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362 (1976). "A person 'subjects' another to the deprivation of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Moreover, supervisory personnel are generally not liable under § 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979).

Plaintiff has presented no evidence that defendants Felker or Winslow were personally involved in the events complained of. To the contrary, in his opposition, plaintiff relies on the supervisory role of each defendant to support their inclusion in this action. See Opposition to Defendants Cross-Motion for Summary Judgment, filed August 30, 2012, at 5-6. Defendants Felker and Winslow are entitled to summary judgment.

/////

In accordance with the above, IT IS HEREBY ORDERED that the Clerk of the Court is directed to assign this action to a United States District Judge;

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's July 25, 2012 motion for summary judgment be denied; and

2. Defendants' August 15, 2012 cross-motion for summary judgment be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the objections shall be filed and served within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: February 20, 2013.

UNITED STATES MAGISTRATE JUDGE

12
shar2484.57